IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

GERALD ELWELL,
SEAN ASH,
JP BORDEWICK, and
RICHARD WARNER,
individually and on behalf of all other
similarly situated persons,

                Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION
INTERNATIONAL,

                Defendant.

---

## CLASS ACTION COMPLAINT

---

Plaintiffs, individually and on behalf of all others similarly situated, for their Class Action Complaint against the defendant, Air Line Pilots Association International ("ALPA"), allege as follows:

### Nature of the Claims

1.    This is a civil action brought to enforce the defendant union's duty of fair representation of the Plaintiffs and all members of the class of Pilot Instructors ("PI"s) who worked for United Airlines' ("United") during the applicable period, pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*

2.     During 2012, ALPA negotiated with United to secure a new collective bargaining agreement, and therefore a new and increased pay scale, for all United pilots, including the PIs.

3.     Because the prior collective bargaining agreement expired in 2009, ALPA, through both its United Master Executive Council ("United MEC") and its Continental Air Lines MEC, was able to negotiate a $400 million lump sum payment to be distributed by ALPA to all eligible pilots.

4.     Ultimately, ALPA, through its United MEC, decided to distribute the United portion ($225,000,000) to the eligible United pilots in the form of retroactive pay, in accordance with guidance in the ALPA Administrative Manual, Section 40.

5.     ALPA knew that the $225,000,000 lump-sum payment would not be sufficient to pay all United pilots 100% of the retroactive pay they would be entitled to receive if the terms of the new 2012 collective bargaining agreement were applied directly to the applicable time period.  ALPA, acting through its United Master Executive Council ("United MEC"), therefore devised a method to apportion the lump-sum retroactive pay among all United pilots, including the PIs, to pay a part of the retroactive pay to which the pilots and PIs were entitled.

6.     ALPA and its United MEC had a fiduciary duty to represent all United pilots fairly and equally, pursuant to the RLA, in apportioning the retroactive pay.

7.     ALPA and its United MEC breached their fiduciary duties and obligations to the PIs by making an arbitrary decision to treat PIs very differently from the other United pilots.  In effect, the other United pilots received a significantly larger portion of the retroactive pay they were owed, in comparison to PIs, who received significantly

2

less of the retroactive pay owing to them.  ALPA and its United MEC treated the PIs disproportionately worse than the other United pilots, to a significant degree.

8.      The PIs, including the named Plaintiffs, have exhausted the expedited dispute resolution process of ALPA, but to no avail; ALPA has continued to refuse to pay the PI class members using the same apportionment formula ALPA devised to compensate the rest of the United pilots.

9.      ALPA's decision regarding retroactive pay to be paid to the PIs, and ALPA's review of its decision, has been arbitrary, discriminatory, and/or in bad faith.

10.     Accordingly, Plaintiffs bring this suit pursuant to the Railway Labor Act to enforce ALPA's obligations of fair representation and to recover money damages for the retroactive pay they are rightfully owed.

11.     As a matter of fairness given that all United PI members of ALPA deserve to be treated similarly in terms of retroactive pay, Plaintiffs bring this lawsuit as a Rule 23 class action to enforce the same rights of all United PIs in the class.

**The Parties**

12.     Plaintiff Gerald Elwell is a resident of the state of Colorado and lives in and around Denver.  This Plaintiff is currently a United Pilot Instructor and has been since 1997.

13.     Plaintiff Sean Ash is a resident of the state of Colorado and lives in and around Denver.  This Plaintiff is currently a United Pilot Instructor and has been since 1997.

14.     Plaintiff JP Bordewick is a resident of Colorado and lives in and around Denver.  This Plaintiff is currently a United Pilot Instructor and has been since 2010.

15.     Plaintiff Richard Warner is a resident of the state of Colorado and lives in and around Denver.  This Plaintiff is currently a United Pilot Instructor and has been since 1996.

16.     Defendant Air Line Pilot Association International is the largest airline pilot union in the world and represents more than 50,000 pilots at 33 U.S. and Canadian airlines.  It is the collective bargaining agent for a large portion of commercial airline pilots in the United States.  ALPA is chartered by the AFL-CIO.  APLA's national headquarters are located in Washington, D.C.  It also has an office in Herndon, Virginia.

17.     ALPA's National Officers -- the President, First-Vice President, Vice-President-Administration/Secretary, and Vice-President-Finance/Treasurer -- guide the Association's work overall.  ALPA also has a Board of Directors.

18.     Members of each ALPA carrier are represented by their respective Master Executive Council (MEC).  Accordingly, each MEC consists of one or more Local Councils (LEC), which generally correspond with the pilots' major domiciles.

19.     The LECs in turn make up each airline's respective MEC. The LECs vote for officers who become voting status representatives who elect the officers of the MEC.

### Jurisdiction, and Venue

20.     ALPA is subject to the jurisdiction of this Court by virtue of its contracts with, discussions with, and decisions impacting the PIs located in this jurisdiction.  ALPA may be served with process pursuant to the Federal Rules of Civil Procedure by delivering a copy of this Complaint and a summons to one or more of its authorized agents located at its national headquarters, located at 1625 Massachusetts Avenue, NW, Washington, D.C.

21.     The RLA has been interpreted as authorizing court actions by private parties to recover damages for violation of a common carrier union's duty of fair representation of its members.  Accordingly, the Court has federal question jurisdiction over Plaintiffs' RLA claims, pursuant to 45 U.S.C. § 151, *et seq.*, 45 U.S.C. § 181, *et seq.* and interpretive case law (*see, e.g., Air Line Pilots Association v. O'Neill*, 499 U.S. 65 (1991)), and 28 U.S.C. § 1331.

22.     This Court also has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2) because the case is brought as a class action between citizens of different states and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

23.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (g), because the named Plaintiffs and putative class representatives reside in this District, the PIs in the class largely reside in and around this District because of their work at the United Training Center at the Denver airport, the training they provide to the other pilots (and union members) of United largely occurs in this district, and because a substantial part of the events giving rise to the claims occurred in this District.

### General Allegations

### *ALPA's Duty of Fair Representation*

24.     As a collective bargaining agent, ALPA, in its own right and through its subsection the United MEC, owed fiduciary duties to the PIs pursuant to the Railway Labor Act, 45 U.S.C. § 151, *et seq.*

25.     Under the Railway Labor Act and as defined by interpretive case law, ALPA and the United MEC owe fiduciary duties to represent all members fairly.  *See,*

*e.g., Int'l Ass'n of Machinists, v. Street*, 367 U.S. 740, 759-60 (1961); *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 94 (3d Cir. 1968); *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974).

26.     The fiduciary duty of fair representation owed by a union to its members is like the duty a trustee owes to trust beneficiaries or the duty owed by an attorney to a client, among other examples.  *See Air Line Pilots Ass'n, Int'l. v. O'Neill*, 499 U.S. 65, 74-75 (1991). Such a duty is the highest and most stringent duty recognized in the law and requires "[n]ot honesty alone, but the punctilio of an honor the most sensitive." *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (J. Cardozo) (quoting *Wendt v. Fischer*, 154 N.E. 303, 304 (N.Y. 1918).

27.     A union's duty of fair representation extends to all acts related to the negotiation, administration, and enforcement of collective bargaining agreements.  *Int'l Broth. of Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979).

28.     A union breaches its duty of fair representation if its actions are arbitrary, discriminatory, and/or in bad faith.  *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).

***Wage Structure of United Pilots and PIs***

29.     Under the current and expired ALPA collective bargaining agreements with United, all United pilots have a "line bid" designating  fleet, seat and longevity.

30.      Under the 2003 United-ALPA Collective Bargaining Agreement LOA 89-02 ("2003 CBA"), PIs were required to bid and hold a line bid.   In a pilot's line bid, the necessary data includes:   the "fleet" the pilot flies, meaning the type of aircraft; the pilot's "seat" (for example, Captain (C) or First Officer (FO); and the pilot's "longevity" of

service in years.  Using this information, each individual line pilot's hourly pay rate can be determined by looking at a chart in section 3 of the applicable collective bargaining agreement.  There is, however, no pay chart in section 3 for a pilot instructor hourly pay rate.  In order to determine the hourly pay rate for a pilot instructor, you have to look in the body of each individual contract.

31.    In comparison to the hourly pay  rates that had been in place under the 2003 collective bargaining agreement, all or nearly all United line pilots received an increase in their current line bid hourly pay rate when United and ALPA reached agreement on a new collective bargaining agreement 2012.

32.    The primary issue in this suit is ALPA's arbitrary undervaluing of the portion of the retroactive pay lump sum the PIs were entitled to receive for 2010, 2011, and 2012.  This time period constitutes the "applicable period" in this case.

***Collective Bargaining History, and the 2012 Agreement***

33.     In the 2003 CBA, United and ALPA, on behalf of United pilots, set the pay for all United pilots, including the PIs.

34.    The 2003 CBA was effective through 2009, but United and ALPA were unable to negotiate a new collective bargaining agreement to take effect until 2012, when they finally negotiated a new collective bargaining agreement ("2012 UPA").

35.    Accordingly, the United line pilots' wages increased in 2012 under the new UPA.  Because of the delay in negotiating a new contract after the amendable date ALPA was able to negotiate a $400 million lump sum payment for all eligible pilots.  In accordance with Section 40 of ALPA's Administrative manual, the United MEC decided to distribute it's portion as "Retroactive Pay".

7

***United's Lump-Sum Payment to ALPA for Retroactive Pay***

36.     Pursuant to federal law as established by the RLA and interpretive cases, all United pilots were required to continue working under the old contract until a new collective bargaining agreement was adopted.

37.     Under ALPA Administrative Manual, Section 40, Part 5, C.2., there should be some form of retroactivity when negotiating a new contract to prevent airline management from stalling in negotiating a new contract.

38.     While negotiating the 2012 UPA, ALPA was given a lump sum amount, and allocated $225,000,000 of it as retroactive pay for all United line pilots, including the PIs, for the applicable period.   The allocation of the retroactive pay was ultimately embodied in a Letter of Agreement between United and ALPA, called Letter of Agreement 24, Allocation Payment ("LOA 24").

***ALPA's Decision to Distribute Retroactive Pay Using the "Delta Differential"***

39.     ALPA knew at the time it received the lump sum that the lump sum would not be nearly enough to provide all United pilots with 100% of the retroactive pay they should have received, if the new line bid hourly pay rates of the 2012 UPA were applied to the pilots' actual work time during the applicable period.

40.     Upon receiving the lump-sum payment from United, it was incumbent on ALPA to distribute the retroactive pay fairly to all United line pilots, including the PIs, pursuant to ALPA's fiduciary duty of fair representation per the RLA. ALPA Administrative Manual, Section 40 states that a MEC shall consider the purpose or reason for the lump sum payment, and apply relevant factors to seek an equitable outcome in light thereof.

8

41.     Upon receiving the lump-sum payment from United, it was further incumbent on ALPA to distribute the retroactive pay fairly to all United line pilots, including the PIs, pursuant to the terms of ALPA's own administrative procedures, including but not limited to its obligations and procedures pursuant to Section 40 of ALPA's Administrative Manual, Part 3 General Negotiating Procedures, Subpart J Allocation of Lump Sum Payments ("Section 40 Part 3J").

42.     ALPA devised a "General Rule" for how to distribute the retroactive pay to the United pilots.  *See* LOA 24, Exhibit B, Paragraph A.  The General Rule was that the calculation of retroactive pay for a particular pilot would be based on a percentage of a number that ALPA named the so-called "Delta Differential."

43.     The General Rule, through the Delta Differential, arbitrarily relied on what the particular United line pilot would have earned under the 2008 Delta Airlines Pilot Working Agreement ("Delta PWA").  Thus, rather than determining actual retroactive pay owed to United pilots using the 2012 UPA that had just been adopted, ALPA arbitrarily chose to determine the retroactive pay based on what the same United pilot would have earned under the Delta PWA as though the pilot were flying for Delta Airlines during 2010, 2011, and 2012.

44.     Accordingly, for most United pilots, the Delta Differential was the difference between the hourly pay rate under Section 3 of the 2008 Delta PWA and the hourly pay rate under the 2003 CBA for a pilot, using the same combination of seat, fleet, and longevity for the pilot under both documents.  *See* LOA 24. Ex. B, ¶ B.9.

45.     ALPA failed to use this same methodology to determine the amount of the retroactive pay lump sum to apportion to the PIs, thereby breaching ALPA's duty of fair representation to the PIs.

***ALPA Arbitrarily Changed the Calculation of the "Delta Differential" for the PIs***

46.     Although ALPA through its United MEC devised the above General Rule, ALPA through its United MEC arbitrarily chose to use a different method for allocating retroactive pay to the PIs.  As a result, PIs will receive a disproportionately small share of the $225,000,000 lump sum compared to other United line pilots.

47.     Inexplicably, the PIs' retroactive pay was calculated based on an arbitrary exception to the General Rule, using a different methodology to determine the PI's "Delta Differential," without any reference to what a Delta pilot instructor would be paid under the 2008 Delta PWA and ignoring what a pilot instructor actually makes under the new 2012 UPA.

48.     Under LOA 24, Exhibit B, ¶C.2, the Delta Differential for PIs was instead calculated using the hourly pay rate arbitrarily chosen from the old, expired 2003 CBA using a maximum seat, fleet, longevity combination of a 767/757 First Officer with 6 years of longevity.

49.     Unlike the other United line pilots, the Delta Differential calculation for the United PIs was determined without reference to the particular PI's pay under either the 2008 Delta PWA or the 2012 UPA.

50.     Unlike the other United line pilots, the Delta Differential calculation for the United PIs put the PIs' retroactive pay amounts closer in line with the amounts the PIs would have earned under the 2003 CBA.

***ALPA's Arbitrary Method to Determine the United PI's Share of the Retroactive Pay Significantly Underpaid the United PIs in Comparison to the Other United Pilots***

51.     The methodology adopted by APLA through its United MEC resulted in disparate treatment of the PIs in the form of an arbitrarily inequitable and unfair outcome to the Plaintiffs and to the PI class.

52.     Under the exception to the General Rule that ALPA imposed on the PIs, Plaintiffs and the PI class members will receive lower retroactive pay amounts than all the other United line pilots who were paid under the General Rule.  Stated conversely, the arbitrary distinction ALPA drew between PIs and the other United line pilots resulted in greater retroactive pay amounts to non-PI pilots, at the expense of the PIs.

53.     Under ALPA's exception to its General Rule, the calculation of a PI's retroactive pay ignores the PI's actual line bid – unlike the other United pilots under the General Rule -- and instead imposes an arbitrary cap in calculating retroactive pay.  No similar arbitrary method was imposed on any other pilot group under the General Rule.

54.     By way of example, under the General Rule applicable to the other United line pilots, a PI whose seat, fleet, and longevity are First Officer, 747, and 12-years, would be calculated as follows for 2012:

**$154.19/hr (per 2008 Delta PWA)  –  $99.36 (per 2003 CBA)**

**= $54.83/hr (Delta Differential)**

However, under the exception to the General Rule ALPA applied to the PIs, the Delta Differential of the same PI with the same seat, fleet, and longevity arbitrarily must use a 767/757 fleet (rather than the actual 747 fleet), and using just 6 years of longevity (rather than the actual 12 years of longevity).  *See* LOA 24, Exhibit B, Section C.2.  This

results in a substantially and arbitrarily lower Delta Differential for the PI compared to the United pilots calculated under the general rule:

**$116.68/hr (arbitrary 2008 Delta PWA) – $99.36 (2003 CBA)**

**= $17.32/hr (Delta Differential)**

55.     Whereas all other line pilots' Delta Differential reflects what the pilot would have earned as a Delta pilot under the 2008 Delta PWA, the exception to the General Rule applied to the PIs is not based on a counterpart at Delta.  Instead, it was roughly equivalent to what the PIs would have earned in the old hourly pay rate structure under the long-expired 2003 CBA.

56.     Because the calculated Delta Differential is used to determine an eligible pilot's proportionate share of the lump sum retroactive payment, reducing the PIs' share by arbitrarily and artificially manipulating the formula as to the PIs decreased the share of the lump sum retroactive payment that the PIs were to receive, both individually and collectively.

57.     The allocation method used by APLA through its United MEC in LOA 24 results in an unfair, inequitable outcome because it favors non-PIs at the expense of PIs.  Therefore, the allocation violates the ALPA Administrative Manual, Section 40, Part 3J, as well as ALPA's fiduciary duty to the PIs under the RLA.

58.     Subject to their continuing specific calculation of the amount, Plaintiffs estimate that the total undervaluing of retroactive pay for the PI class members is on the order of $7,000,000, and perhaps more.

***Plaintiffs Have Exhausted Their Remedies Pursuant to ALPA's Expedited Disputed Resolution Process***

59.     Some PIs, and members of the PI class, filed notices of their complaints with ALPA to protest the arbitrary and detrimental treatment of PIs under ALPA's retroactive pay allocation.  ALPA Administrative Manual Section 40, Part 3J-11 indicates that the PIs were to follow ALPA's internal "expedited dispute resolution process" before filing suit against ALPA.

60.     ALPA Administrative Manual Section 40, Part 3J-4 through -9 outlines ALPA's expedited dispute resolution process.

61.     The first step of the process is to file a dispute with the ALPA Executive Council in writing.  The second step of the process calls for the PIs to appear at a hearing in front of the ALPA Executive Council, to determine whether ALPA's (through its United MEC) retroactive pay decision should be upheld or modified.  If the Executive Council does not agree with the PIs and upholds the decision of the United MEC, the PIs could next pursue an "expedited arbitration" proceeding.  The "arbitration" is not binding or conclusive on the PIs, because subsequently the PIs may then file suit in court to challenge ALPA's obligations to them under the duty of fair representation, as the PIs do in this instant suit.

62.     The PIs timely filed their complaints with ALPA pursuant to the Administrative Manual Section 40, Part 3J.  The Executive Council held a hearing from February 28 through March 1, 2013.

63.     The Executive Council failed to announce its decision in writing, as required by ALPA's Administrative procedures.  This made further challenge of the

decision unnecessarily difficult.   The Executive Council instead issued a form of "resolution" related to its decision, called "AI #16."

64.     The Executive Council sustained the original retroactive pay decision by ALPA's United MEC and ruled against the PIs.  In doing so, the Executive Council gave no explanation as to why they upheld the United MEC's distribution methodology other than to state that they gave "deference" to the United MEC's original, arbitrary decision. The Executive Council simply stated that the allocation was within the range of MEC allocation methodology decision making.   *See* AI #16; Transcript of Proceedings, Feb. 28 – Mar. 1, 2013, p. 3, l. 77-82.  This decision was unsupported and was merely further lip service to the United MEC's original, arbitrary decision.

65.     The PIs then timely pursued the second level of administrative remedy through ALPA, the "expedited arbitration."   ALPA conducted an arbitration hearing, using an arbitrator selected and paid purely by ALPA and who had a long history of working for ALPA.

66.     After the arbitration hearing, the arbitrator ruled against the PIs and in favor of ALPA and the United MEC.  The arbitrator issued his written decision denying the PIs claims on May 21, 2013.  The arbitrator's decision failed to address or decide the issues presented by the PIs, choosing instead to simply state that ALPA had a methodology and followed said methodology.

67.     Plaintiffs and the PI class now timely file this suit against ALPA seeking redress for ALPA's breaches of fiduciary duty in failing to provide fair representation to the Plaintiffs and to the PI class.

**Class Action Allegations**

68. Plaintiffs bring this suit individually and as a class action pursuant to Fed. R. Civ. P. 23. The class action should proceed under any or all of Fed. R. Civ. P. 23(b)(1), (2), and/or (3).

69. Plaintiffs, individually and on behalf of other United PIs, seek relief challenging ALPA's allocation method of retroactive pay as to the United PIs, in comparison to its allocation method of retroactive pay as to all other United pilots.

70. The claims herein, if certified for class-wide treatment, are brought on behalf of all similarly situated persons in the class. Plaintiffs define the class of PIs as follows:

> All current and former line bid Pilot Instructors working for United Air Lines during the applicable period who were entitled to receive retroactive pay for the applicable period upon ALPA's agreement with United for the 2012 Collective Bargaining Agreement.

71. The claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Fed. R. Civ. P. 23.

72. The number and identity of other Plaintiffs in the class directly from ALPA's records, and potential class members may easily and quickly be notified of the pendency of this action. Plaintiffs estimate the number of PIs in the class as approximately 130, many of whom are geographically dispersed. As a result, the Class is numerous, and joinder of all class members in a single action is impracticable.

73. There are questions of law and fact common to the classes arising from ALPA's actions including, without limitation, whether ALPA violated or breached its fiduciary duty of fair representation of the PIs in arbitrarily devising an allocation

methodology for the retroactive pay owing to the PIs during the applicable period, and what damages ALPA owes the PIs based on ALPA's breaches of duty.

74. The named Plaintiffs' claims are typical of those of the Class in that the named Plaintiffs and the class members:

a. worked as line bid Pilot Instructors for United during some or all of 2010, 2011, and 2012;

b. trained United's other non-PI pilots during the relevant time period;

c. were paid pursuant to the 2003 CBA through 2012;

d. are paid pursuant to the 2012 UPA now, to the extent they are still flying for United;

e. are entitled to retroactive pay from United through ALPA for the periods 2010, 2011, and 2012;

f. were subjected to ALPA's arbitrary method of allocating the lump sum made available for retroactive pay;

g. received less pay under ALPA's arbitrary method of allocating the lump-sum than they should have received, had ALPA reasonably applied the same method of allocating retroactive pay to the PIs as had been used for all other United pilots; and

h. Their activities are centered in and around United's training center located in Denver, Colorado and in this District, primarily if not also exclusively.

75. Each of the named Plaintiffs is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interest of the Class members he seeks to represent. The interests of the Class members will be

fairly and adequately protected by the named Plaintiffs serving as class representatives, and by the undersigned counsel, who have extensive experience prosecuting complex class action litigation, including wage, salary, and pay issues.

76. This case may be appropriately certified as a class action under Rule 23(b)(1) because a class action is the appropriate method for the fair and efficient adjudication of these claims because requiring 130 PIs to prosecute separate actions would create a risk of inconsistent or varying adjudications with respect to individual PIs that would establish incompatible standards of conduct for ALPA and/or because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other PIs.

77. This case is also appropriately certified as a class action under Rule 23(b)(2) because ALPA has acted or refused to act on grounds generally applicable to the Class such that final injunctive or declaratory relief is appropriate as to the class as a whole.

78. This case is also appropriately certified as a class action under Rule 23(b)(3) because the common questions of law and fact set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

79. Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action and maintaining

separate actions would place a substantial and unnecessary burden on the courts, while a single class action can efficiently determine the rights of all Class members.

## Count I:  Violations of the Railway Labor Act

80.    Plaintiffs reassert and re-allege herein all the allegations set forth above.

81.    At all relevant times herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the RLA, 45 U.S.C. §§ 151, *et seq.*

82.    The RLA establishes, among other things, an obligation and fiduciary duty on common carrier unions to fairly represent the interests of all union members equally.

83.    ALPA is subject to the RLA's obligations and fiduciary responsibilities because it is a labor union for common carriers in the aircraft industry.

84.    ALPA's obligations and fiduciary duties to Plaintiffs and to all members of the PI class included the obligation to make decisions regarding wage compensation, including retroactive pay, for all of its members equally.  ALPA's decisions regarding wage compensation, including retroactive pay, for its members must be fair and must not be arbitrary, discriminatory, or made in bad faith.

85.    For many reasons, including but not necessarily limited to all the reasons set forth above, ALPA's decision regarding the methodology to be used to apportion the retroactive pay lump sum to these Plaintiffs and to the PI class members was arbitrary.

86.    On information and belief, ALPA's decision regarding the methodology to be used to apportion the retroactive pay lump sum to these Plaintiffs and to the PI class members was discriminatory and was made in bad faith as to the PI class.

87.    Plaintiffs and all PIs are victims of the same arbitrary decision of ALPA regarding their share of the retroactive pay lump sum for the applicable period.

88.     Plaintiffs and all PIs are entitled to damages equal to, at least, the value of their retroactive pay award as determined pursuant to the same General Rule that ALPA applied to the other United line pilots during the applicable period.

89.     As a direct and proximate result of ALPA's breaches of its duties and obligations to Plaintiffs and to the PI class members, the Plaintiffs and the PI class members have been damaged.

90.     The specific damages to the Plaintiffs and to the PI class members are subject to specific calculation but are known to be far in excess of $75,000.

WHEREFORE, on Count I of this Complaint, Plaintiffs, on behalf of themselves and all United Pilot Instructors, demand judgment against ALPA and pray for:  (1) their compensatory damages; (2) their attorneys' fees; (3) their costs and expenses; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Demand for Jury Trial

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Respectfully submitted,


s/ Richard M. Paul III
Richard M. Paul III (admitted in D. Colo.)
Jack D. McInnes
PAUL McINNES, LLP
2000 Baltimore, Suite 100
Kansas City, Missouri  64108
Telephone:   (816) 984-8100
Facsimile:    (816) 984-8101
paul@paulmcinnies.com
mcinnes@paulmcinnes.com

and

Andrew M. DeMarea   MO#45217 / KS#16141
KENNER SCHMITT NYGAARD LLC
117 W. 20th St., Suite 201
Kansas City, MO 64108
Telephone:   (816) 531-3100
Facsimile:    (816) 531-3600
andy@ksnlegal.com

**ATTORNEYS FOR PLAINTIFFS**