**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No.  13-cv-02343-REB-CBS

GERALD ELWELL,
SEAN ASH,
JP BORDEWICK, and
RICHARD WARNER, individually and on behalf of all other similarly situated persons,

      Plaintiffs,

v.

AIR LINE PILOTS ASSOCIATION INTERNATIONAL,

      Defendant.

---

**ORDER RE: MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT AIR LINE PILOTS ASSOCIATION INTERNATIONAL**

---

**Blackburn, J.**

The matter before me is the **Motion for Summary Judgment and Memorandum of Law of Defendant Air Line Pilots Association, International** [#37],[1] filed December 27, 2013.  I grant the motion in part, deny it in part, and deny it without prejudice as moot in part.[2]

## I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal

---

[1] "[#37]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the motion stands submitted on the briefs.  *Cf.* FED. R. CIV. P. 56(c) and (d).  *Geear v. Boulder Community Hospital,* 844 F.2d 764, 766 (10th Cir.) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties), *cert. denied*, 109 S.Ct. 312 (1988).

question), and, putatively, 1332(d)(2) (Class Action Fairness Act).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Id**. at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. **Rice v. United States**, 166 F.3d 1088, 1092 (10th Cir.), **cert. denied**, 120 S.Ct. 334 (1999).

However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Id*.

### III.  ANALYSIS

This lawsuit arises under the Railway Labor Act (the "RLA"), 45 U.S.C. §§ 151 - 165.  At issue is whether defendant (alternatively referred to herein as "the union") breached its duty of fair representation in allocating retroactive pay among pilots employed by United Air Lines, Inc. ("United").  More specifically, plaintiffs claim that the union's chosen retroactive pay allocation formula treated pilot instructors such as them less favorably than line pilots.  Further history and explanation is necessary.

Defendant is the collective bargaining representative for all United pilots, including plaintiffs.[3]  The union conducts representation of the membership through a Master Executive Committee ("MEC") comprised of pilots elected by their fellows at the airline.  In 2003, the union negotiated a collective bargaining agreement (the "2003 CBA") with United establishing, *inter alia*, pay rates and working conditions for all United pilots, including pilot instructors.  Because the airline filed for bankruptcy that year, the pilots were forced to take significant pay cuts in the 2003 CBA.  The pilot instructors' pay cuts were particularly deep.

Under the RLA, CBAs do not expire, but rather become open for renegotiation, or "amendable."  **See In re Northwest Airlines Corp**., 483 F.3d 160, 167 (2nd Cir. 2007) ("The effect of § 6 [of the RLA] [45 U.S.C. § 156] is to prolong agreements subject to its provisions regardless of what they say as to termination.") (citation and internal

---

[3]  Pilot instructors also are required to serve as line pilots in addition to their training duties.

quotation marks omitted; first alteration in original).  The 2003 CBA became amendable in 2010.  Around this same time, United also merged with Continental Airlines ("Continental").  Thus, in renegotiating the CBA, the union now represented both United and quondam Continental pilots.  Perhaps not surprisingly, these negotiations were protracted, and a new agreement was not consummated until December 2012.  Until the new contract was finalized, the 2003 CBA continued to govern the terms of the United pilots' employment with United.  ***See Air Line Pilots Association, International v. UAL Corp.***, 897 F.2d 1394, 1398 (7th Cir. 1990) ("The [RLA] abhors a contractual vacuum.").

Under the terms of the 2003 CBA, line pilots were paid an hourly rate based on a formula composed of the pilot's "seat" (whether the pilot was a Captain or First Officer), "fleet" (the type of aircraft being flown), and longevity (seniority, up to a twelve-year maximum).  Pilot instructors were paid based on an imputed rate for a First Officer with six years' longevity flying 767/757 aircraft, and were capped at 89 pay hours per month.  Plaintiffs aver that under this formula, not only did they suffer one of the largest pay cuts of any pilot group at United when the 2003 CBA was consummated, but also that they were paid significantly less than their industry peers throughout the term of that agreement.  This discrepancy became particularly acute following the Continental merger, such that, when the new CBA ultimately was finalized in late 2012, pilot instructors received the largest percentage increase in hourly pay.[4]

---

[4] Under the 2012 CBA, pilot instructors are paid at the rate of a First Officer with nine years' longevity flying 747/777 aircraft, the level at which Continental pilot instructors had been paid prior to the merger.  Hourly rates were also increased.

As part of the negotiations, defendant proposed that the airline also compensate pilots for the period between the 2010 amendable date of the 2003 CBA and the effective date of the 2012 CBA (the "retro period"), during which they did not receive the regular pay increases that had been standard prior to the amendable date. Although defendant sought full retroactive pay based on the pay scales of the new CBA, United refused that proposal. The union therefore presented a compromise proposal based on the pay structure it had secured for Delta Air Lines ("Delta") pilots in their 2008 CBA. The Delta contract was chosen because it was considered an industry leader during the retro period and because Delta and United had similar fleets.

United ultimately agreed to this proposal and funded a $400 million retro pay fund, as evidenced by UPA Letter of Agreement 24 ("LOA 24"). This amount was less than required to afford the pilots full retroactive pay. After the union allocated $225 million of this fund to the United pilots and the remaining $175 million to the Continental pilots, United pilots received thirty-eight percent (38%) of full retroactive pay. LOA 24 provided that the United MEC would determine a methodology for allocating the United pilots' share among the membership.

The MEC ultimately chose an allocation formula that compares a United pilot's hourly rate under the 2003 CBA with the same rate – based on the combination of seat, fleet, and longevity – paid under Delta's 2008 CBA in the same month and year from 2010 through 2012.[5] This formula is referred to as the "Delta Differential." The sum of a

---

[5] The MEC chose to use the pay rates of Delta pilots because "(a) that agreement was an industry leading network passenger airline agreement for that Retro Period and thus had higher pay rates than the ALPA-United 2003 agreement[;] (b) it was used as a basis for ALPA's proposals in 2012 for obtaining the retro pay[;] and (c) Delta and United had similar fleets." (**Def. Motion App.**, Fox Decl. ¶ 14 at 6 (internal citations omitted).)

pilot's Delta Differentials for all his or her pay hours during the retro period gave a United pilot a ratable share of the $225 million retro pay fund. Concerning United pilot instructors, the formula applied the same assumptions as to seat, fleet, and longevity that had been effective under United's 2003 CBA – that is, pilot instructors' percentage share of the retro pay fund was calculated based on the difference between what a United First Officer of six years' experience flying 767/757 aircraft earned and what a Delta line pilot at the same fleet, seat, and longevity earned.

Plaintiffs complained that this determination unfairly reduced their proportionate share of the retroactive payment. They believe that an equitable allocation would have compared their compensation to the hourly rates and pay caps of Delta pilot instructors under Delta's 2008 CBA. Ninety-four of the 130 United pilot instructors impacted by this calculation filed written protests with the union, invoking the mandatory, expedited dispute resolution procedure contemplated by LOA 24. At the first level of this process, the union's Executive Council rejected the pilot instructors' challenge and held that the formula was properly applied to them, but agreed to allow the instructors to pursue arbitration of their claim. Following a hearing, the arbitrator determined that the formula was fair and that it had been properly implemented. He thus denied the instructors' claim. This lawsuit followed.

By this suit, plaintiffs allege that the union breached its duty of fair representation in determining how to the allocate the retro pay fund. Because a union is empowered by law to act as the exclusive bargaining agent for its members, its relationship to its members is "akin to the duty owed by other fiduciaries to their beneficiaries." ***Air Line Pilots Association v. O'Neill***, 499 U.S. 65, 74, 111 S.Ct. 1127, 1134, 113 L.Ed.2d 51

(1991). Nevertheless, courts have recognized that a bargaining representative's broad responsibility to its members entails a concomitantly expansive "authority to meet that responsibility." ***Ford Motor Co. v. Huffman***, 345 U.S. 330, 339, 73 S.Ct. 681, 686-87, 97 L.Ed. 1048 (1953). Thus,

> the duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." In other words, a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith.

***Marquez v. Screen Actors Guild, Inc.***, 525 U.S. 33, 44, 119 S.Ct. 292, 300, 142 L.Ed.2d 242 (1998) (quoting ***Vaca v. Sipes***, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)).

As cabined by the parties' stipulation,[6] the present motion addresses only whether defendant's allocation decision was arbitrary.[7] A union acts arbitrarily if, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." ***O'Neill***,

---

[6] Although defendant also sought summary judgment as to plaintiffs' additional allegations that the union's chosen allocation formula was discriminatory and/or that the union engaged in bad faith conduct in selecting that formula, the parties have agreed to hold those issues in abeyance, without prejudice to reasserting them in the future. (*See* **Stipulation Concerning Plaintiffs' Discovery and Defendant's Motion for Summary Judgment** [#42], filed January 17, 2014.) That portion of plaintiff's motion that addresses those issues therefore will be denied without prejudice as moot.

[7] In addition, the motion addresses whether plaintiffs are required to allege and prove some infirmity in the expedited dispute resolution process in which the parties engaged at the administrative level before they may even seek review of the union's actions in this forum. Although these arguments are moot given my substantive resolution of the claim, they are not well-taken in any event. It is plain that, although the alternative dispute resolution procedures were mandatory, the arbitrator's decision was not binding – indeed, the operative section of the union's Administrative Manual specifically contemplates that legal action may be taken after the procedures have been exhausted. (*See* **Def. Motion App.**, Exh. D Pt. 3, ¶ J(11) at 15.) This fact distinguishes this case from those on which defendant relies. *See, e.g.*, ***Air Wisconsin Pilots Protection Committee v. Sanderson***, 909 F.2d 213, 216 (7th Cir. 1990) (where result of arbitration was binding, plaintiffs could challenge arbitrator's award only by showing that arbitration process was infected with fraud or serious conflict of interest), ***cert. denied***, 111 S.Ct. 958 (1991).

111 S.Ct. at 1130 (citation and internal quotation marks omitted). Stated differently, the union's decision "can be classified as arbitrary only when . . . it is without a rational basis or explanation." *Marquez*, 119 S.Ct. at 300. Plaintiffs must establish their claim by "substantial evidence." *See Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).

As should be readily apparent, this standard affords the union considerable leeway in attempting to accommodate and resolve the interests of all represented constituencies. *See United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 374, 110 S.Ct. 1904, 1912, 109 L.Ed.2d 362 (1990) ("The doctrine of fair representation is an important check on the arbitrary exercise of union power, but it is a purposefully limited check[.]"). Conflicts among different constituencies within the represented group are to be expected:

> Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected.

*Ford Motor Co.*, 73 S.Ct. at 686. Thus, while the duty of fair representation "require[s] unions to deal with conflicts by *considering* the interests of each group, *Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 764 (7th Cir.), *cert. denied*, 109 S.Ct. 393 (1988) (emphasis in original), it does not permit the court to "substitute its own view of the proper bargain for that reached by the union," *O'Neill*, 111 S.Ct. at 1135. Accordingly, my review must be "highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill*, 111

S.Ct. at 1135.

Plaintiffs's arguments are something of a moving target. Initially, they maintain that the allocation formula was arbitrary because it ignored the purposes of the lump sum payment, as required by the LOA 24.[8] As plaintiffs see it, because the union was able to negotiate only about thirty-eight percent (38%) of full retroactive pay, "[t]he obvious, rational, non-arbitrary solution to this would have been to simply award every line pilot – including the Pilot Instructors – roughly 38% of their true retroactive pay." (**Plf. Resp. Br.** at 14.) Plaintiffs maintain that, because they had been underpaid under the 2003 CBA, an equitable distribution would have attempted to compensate for that shortfall. Of course, the fact that there may have been other ways to allocate retroactive pay does not *ipso facto* make the union's choice between them irrational. The duty of fair representation does not obligate the union to adopt the method plaintiffs prefer or to seek to remedy alleged shortcomings in past union contracts. Instead, the allocation formula must be upheld unless that choice was arbitrary in the sense of being wholly irrational and baseless.

Considering those standards, I simply cannot find that the union's decision regarding the allocation of the lump sum payment was outside the broad bounds of reasonableness afforded it under the RLA. **See O'Neill**, 111 S.Ct. at 1130. The allocation formula for *all* United pilots, including pilot instructors, was based on their pay rates under the 2003 CBA. Thus, every United line pilot received retroactive pay based

---

[8] LOA 24 provides that the allocation formula "is subject to ALPA policy set forth in the ALPA Administrative Manual, Section 40 Part 3.J." (**Plf. Resp. App.**, Exh. A-1 ¶ E.) The Administrative Manual, in turn, contemplates that "[i]n making a decision on allocation of a Lump Sum Payment, an MEC shall consider the purposes or reasons for the Payment, and apply relevant factors to seek an equitable outcome in light thereof." (***Id.***, Exh. 2-A § J.3.)

on a comparison of his or her seat, fleet, and longevity under the 2003 CBA to the rates under Delta's 2008 CBA.  Likewise, every United pilot instructor was allocated retroactive pay based on the assumptions of seat, fleet, and longevity that governed his or her pay under the 2003 CBA.  It can hardly be considered unfair or inequitable – must less irrational and arbitrary – for the union to have adopted the same starting point for both groups based on what they already were being paid.  Although a different allocation may have resulted in a larger payout to plaintiffs, the union's responsibility was to maximize outcomes for *all* its members.  "Neither employees as a whole nor particular groups of employees emerge from bargaining with all their wants satisfied.  Often unions can achieve more for some of their constituents only by accepting less for others."  **Rakestraw v. United Airlines, Inc.**, 981 F.2d 1524, 1529-30 (7th Cir. 1992), **cert. denied**, 114 S.Ct. 175, **and cert. denied**, 114 S.Ct. 286 (1993).[9]  These are the realities of a contract reached through negotiated compromise.

      Nor can I find that the union breached its duty of fair representation in electing to rely on Delta's 2008 CBA as a point of comparison for the retro pay allocation.  The union's original negotiating position was to seek retro pay based on the pay tables under the 2012 United CBA.  When United refused to agree to those terms, the union was required to propose a compromise, which United ultimately accepted.  **See id.** at 1529 ("Negotiation means compromise.").  The MEC's decision to turn to the same

---

[9] Due to the parties' stipulation limiting the issues to be considered in resolving this motion, I do not address plaintiffs' additional contentions regarding alleged tensions between pilots and pilot instructors and any concomitant discrimination in favor of the pilots at the expense of the smaller, less influential group of instructors.  **But see Rakestraw**, 981 F.2d at 1535 ("[A] 'bad' motive does not spoil a collective bargaining agreement that rationally serves the interests of workers as a whole, and that treats employees who are pariahs in the union's eyes no worse than it treats similarly situated supporters of the union.").

Delta 2008 CBA as a comparator that the union used in negotiating the retro pay agreement in formulating the allocation formula therefore was not arbitrary. Moreover, it was not irrational to use that contract, as the evidence shows that the two airlines had similar fleets and that the Delta 2008 CBA was "an industry leading network passenger airline agreement for that Retro Period." (**Def. Motion App.**, Fox Decl. ¶1 4 at 6 [#37-1], filed December 27, 2013.)[10] Here again, I find and conclude that the union was well within the considerable bounds of its authority in relying on another airline's contract, especially when no one disputes that the 2008 CBA was comparatively favorable for all pilots.[11] Because its actions were not arbitrary, defendant is entitled to summary judgment as to this aspect of plaintiff's duty of fair representation claim.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion for Summary Judgment and Memorandum of Law of Defendant Air Line Pilots Association, International** [#37], filed December 27, 2013, is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE AS MOOT** in part, as follows:

> a. That the motion is **GRANTED** insofar as it seeks summary judgment on plaintiffs' claim that defendant breached its duty of fair representation

---

[10] Plaintiffs' suggestion that these statements are conclusory and therefore inadmissible is not well-taken. The statements are contained within a sworn declaration of a person with knowledge of these matters. *See* **FED. R. CIV. P.** 56(c)(1)(A). As the parties with the burden of proof on this claim, plaintiffs have offered no contradictory evidence to suggest that the facts are other than as averred in the apposite declaration.

[11] Indeed, the fact that plaintiffs themselves seek to rely on the pay structure of Delta pilot instructors in support of their arguments elsewhere tends to lend credence to defendant's assertion that the Delta contract was comparatively favorable.

by acting arbitrarily in selecting the allocation formula for retroactive pay to United pilots and pilot instructors, and that aspect of plaintiffs' claim is **DISMISSED WITH PREJUDICE**;

b. That the motion is **DENIED** insofar as it argues that plaintiffs' are precluded from challenging the arbitrator's decision; and

c. That in light of the parties' **Stipulation Concerning Plaintiffs' Discovery and Defendant's Motion for Summary Judgment** [#42], filed January 17, 2014, the motion is **DENIED WITHOUT PREJUDICE AS MOOT** insofar as it seeks summary judgment as to plaintiffs' allegations that defendant breached the duty of fair representation by acting in a manner that was discriminatory and/or in bad faith; and

2. That at the time judgment enters, judgment with prejudice **SHALL ENTER** on behalf of defendant, Air Line Pilots Association International, against plaintiffs, Gerald Elwell; Sean Ash; JP Bordewick; and Richard Warner, individually and on behalf of all other similarly situated persons, as to plaintiffs' claim that defendant breached its duty of fair representation by acting arbitrarily in selecting the allocation formula for retroactive pay to United pilots and pilot instructors.

Dated August 19, 2014, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge